IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                              Case No. 5:07cr27-RS

JOHN GONZALES,

    Defendant.
_____/

### ORDER ON AMENDED MOTION TO DISMISS INDICTMENT

Before me is Defendant's Amended Motion to Dismiss Indictment (Doc. 20) to which the government has responded (Doc. 26.)

### I. Background

Defendant John Gonzales was convicted of Forcible Sodomy, Lewd Molestation, and Indecent Exposure to a Child in the State of Oklahoma on May 26, 1993, and sentenced to three concurrent five-year terms of imprisonment. On July 27, 2006, Congress enacted and the President signed into law the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901 et seq. SORNA requires a sex offender to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). The one-count indictment filed on May 15, 2007, charges Defendant with "knowingly and unlawfully fail[ing] to register and update a registration as required by [SORNA] . . . in violation of 18 U.S.C. § 2250(a)[1]."

---

[1]18 U.S.C. 2250(a), Failure to register, provides that:

(a) In general. – Whoever –

Defendant urges dismissal of the indictment on eight grounds:

1. The government failed to notify Defendant of his registration duties as required by 42 U.S.C. § 16917(a) and (b)[2], and Defendant therefore could not have "knowingly"

---

(1) is required to register under [SORNA];

(2)(A) is a sex offender as defined for the purposes of [SORNA] by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by [SORNA];

shall be fined under this title or imprisoned not more than 10 years, or both.

[2] 42 U.S.C. § 16917, Duty to notify sex offenders of registration requirements and to register, provides that:

(a)   In general

An appropriate official shall, shortly before release of the sex offender from custody, or, if the sex offender is not in custody, immediately after the sentencing of the sex offender, for the offense giving rise to the duty to register –

(1) inform the sex offender of the duties of a sex offender under this subchapter and explain those duties;

(2) require the sex offender to read and sign a form stating that the duty to register has been explained and that the sex offender understands the registration requirement; and

(3) ensure that the sex offender is registered.

(b)   Notification of sex offenders who cannot comply with subsection (a) of this section

The Attorney General shall prescribe rules for the notification of sex offenders who cannot be registered in accordance with subsection (a) of this

failed to register or update a registration, the mens rea required for conviction under 18 U.S.C. § 2250(a)(3);

    2. The government must prove that Defendant "travels in interstate or foreign commerce" as an element under 18 U.S.C. § 2250(a)(2)(B), but the indictment fails to allege that Defendant traveled after SORNA was effective or applicable to him;

    3. The statute which Defendant is charged with violating, 18 U.S.C. § 2250(a), is unconstitutional in that it impermissibly infringes Defendant's constitutional right to interstate travel;

    4. 18 U.S.C. § 2250(a) is an unconstitutional exercise of Congress's authority under the Commerce Clause because it does not require that the accused travel in interstate commerce "in furtherance of a crime that affects interstate commerce," therefore lacking the necessary nexus between interstate travel and any crime or effect on commerce;

    5. Because SORNA and 18 U.S.C. § 2250(a) "punish" Defendant for conduct that occurred prior to their enactments, the laws are unconstitutionally ex post facto;

    6. SORNA and 18 U.S.C. § 2250 violate Defendant's procedural and substantive due process rights under the Fifth Amendment;

    7. Because Congress did not intend that SORNA and 18 U.S.C. § 2250 were retroactively applicable, the statutes should not be retroactively applied to Defendant; and

    8. Congress unconstitutionally abdicated legislative functions to the executive branch by delegating authority to the Attorney General to determine criminal liability under SORNA.

## II. Analysis

I will address each of Defendant's contentions in the order set forth above.

**A. Government's Alleged Failure to Notify as Negating the Mens Rea Required for Conviction Under 18 U.S.C. § 2250(a).**

Defendant contends that dismissal of the indictment is justified because (1) the

---

section.

Government failed to notify Defendant of SORNA's registration requirements under 42 U.S.C. § 16917(a) and (b), and (2) Defendant therefore could not have "knowingly" failed to register or update a registration, the mens rea required for conviction under 18 U.S.C. § 2250(a)(3).  Both of these contentions are without merit.

In its response to the amended motion, the government attached documents the authenticity of which have not been challenged, that would permit a jury to reasonably find that Defendant had knowledge of his duty to register and update his registration as a sex offender but knowingly failed to do so.  The first document is unambiguously entitled "Sex Offender Registration Initial Registration" and is dated September 13, 2006 ("Initial Registration").  (Doc. 26-2:3.)  The Initial Registration purports to contain Defendant's signature, fingerprint, social security number, date of birth, address, and phone number and the signature of a Detective Jones, an employee of the Denver Police Department.  (Doc. 26-2:3.)

A second document entitled "Denver Police Department Sex Offender Information Sheet" and dated September 13, 2006, also purports to contain the signatures of Detective Jones, Defendant, and Defendant's fingerprint ("Information Sheet").  The Information Sheet unambiguously states that

> It is your responsibility to keep your record with the Denver Police Department, Sex Offender Unit up to date.
>
> If you move you must respond to the Denver Police Department, Sex Offender Unit and complete a Change of Address form.  Bring documentation with you so that your new address can be verified.
>
> If you move outside the City and County of Denver, you must respond to the Denver Police Department, Sex Offender Unit so that you can be deleted from our records.  You must provide proof of your new address so that the appropriate agency can be notified.  It is your responsibility to register with the local law enforcement agency where you will be residing.

(Doc. 26-2:4.)  The Information Sheet further purports to have notified Defendant of the requirement that he register "quarterly" as a sex offender; that his next registration due date was December 13, 2006; that "[a]n arrest warrant will be issued if you fail to

comply"; and further advised Defendant that

> My responsibilities as a Registered Sex Offender within the State of Colorado are:
>
> To notify local law enforcement within five (5) days of any change of address.
>
> To return on the above registration due date to update my records, whether or not there have been any changes.
>
> I also understand that I must de-register if I leave the jurisdiction.
>
> Failure to comply with any one of the above may result in my being charged with Failure to Register as a Sex Offender.
>
> I have read and understand my responsibilities as outlined above.

(Doc. 26-2:4.)

Third, the government submitted a copy of the "Affidavit and Application for Arrest Warrant" dated January 17, 2007, which purportedly led to Defendant's arrest and the present charge. (Doc. 26-2:5-6.) The affiant, Detective Jones, attests that he advised [Defendant] that the next registration date would be December 13, 2006; that the registration date was included on the Information sheet signed by Defendant; that Defendant failed to "respond on that or any other date to the Denver Police Department nor has the defendant registered in any other jurisdiction . . . as of 1/15/07"; that Defendant had listed an incorrect location of residence when he initially registered as a sex offender; that Defendant had moved from the residence he listed several months prior to his initial registration for non-payment of rent; and that the phone number listed by Defendant on his Initial Registration was no longer valid.

Finally, the government submitted a copy of Defendant's application for a Florida driver's license. (Doc. 26-2:7.) In that application, Defendant lists an address in Panama City, Florida. Defendant failed to indicate on his application that he was a sexual offender, although the application provided a box in which to designate himself as such.

Construing the evidence submitted in the light most favorable to the nonmoving party, which is required when assessing the merits of a motion to dismiss, I find that a jury could properly find that Defendant was adequately notified of his duty to register and update his registration on September 13, 2006, well after SORNA's effective date of July 27, 2006. I further find that although Defendant was allegedly notified of his registration duties under Colorado law, a jury could reasonably conclude that the notice allegedly imparted to Defendant by Colorado authorities of Defendant's ongoing registration duties was sufficient to satisfy the element under § 2250(a) of "knowingly fail[ing] to register or update a registration as required by [SORNA]." In particular, Colorado authorities allegedly informed Defendant of the registration duties of a sex offender; explained those duties; required Defendant to read and sign a form stating that the duty to register had been explained and that Defendant understood the registration requirement; and ensured that Defendant was registered, thus satisfying the SORNA notification requirements set forth in 42 U.S.C. § 16917(a).

Defendant does not maintain in his motion that the notification requirements under Colorado law were different from the notification requirements under SORNA or that Defendant was unaware of a duty to register and update his registration. This is not a case in which a defendant has received no notice whatsoever from the government of the ongoing registration duties required of him as a convicted sexual offender. On the contrary, Defendant was allegedly registered; informed of his duties to register and update his registration; and purportedly signed a document stating that "I have read and understand my responsibilities."

The documents submitted by the government effectively moot Defendant's contention that the Attorney General could not have provided him with proper notice under 42 U.S.C. § 16917(b). The plain language of subsection (b) unambiguously states that subsection (b) applies only to sex offenders who cannot be registered in accordance with subsection (a). Because the government contends that Defendant was already initially registered and received appropriate notification of his ongoing registration duties, I find Defendant's contention that he could not be properly noticed of his registration duties but-for the rules enacted by the Attorney General to be baseless.

In fact, assuming the government's allegations to true, it would have been unnecessary and indeed superfluous to require that Defendant be noticed by the rules prescribed by the Attorney General because he had already received appropriate notification of the registration requirements.

The government does not charge Defendant with violating some obscure registration requirement in fine print; rather, the government charges Defendant with *wholly* failing to register and update the registration required of a sexual offender.  In fact, construing the documents submitted in the light most favorable to the government, a jury could reasonably conclude that Defendant not only *knowingly* failed to register or update his registration but even *purposely* or *intentionally* sought to *evade* the registration requirements by providing a false address at the time of registration, skipping town to Florida, and failing to update his registration as a sexual offender in Colorado and Florida.

Underlying Defendant's request for dismissal is his apparent discomfort at facing potential conviction under § 2250(a) when he was presumably aware that failing to register or update his registration would violate Colorado law but was unaware that such conduct would also constitute a violation of newly enacted *federal* law.  That species of cat - that ignorance of the law permits non-compliance - has exhausted its nine lives several times over and is undeserving of discussion.  The excuse is particularly lame when offered by an individual who has been convicted of a sex crime, as noted by the court in United States v. Roberts, 2007 WL 2155750 (W.D. Va. 2007):

> Few offenders have ever had relevant sections of the U.S. Code read to them before committing their crimes, yet they are expected to comply with it even so.  Owners of firearms, doctors who prescribe narcotics, and purchasers of dyed diesel are all expected [to] keep themselves abreast of changes in the law which affect them, *especially because such people are on notice that their activities are subject to regulation*. . . . Sex offenders are no different; they must comply with the law even when it changes suddenly and without notice, and they are well advised to periodically check for changes *because they are particularly subject to regulation*.

Id. at *2 (emphasis added).

Defendant also seems to suggest that the language in § 2250(a)(3) - "knowingly fails to register or update a registration as required by [SORNA]" - requires the government to prove that Defendant knew that his alleged failure to register or update his registration constituted a violation of SORNA.  In making this argument, Defendant erroneously construes the crime codified in § 2250(a) within the genre of a specific-intent crime.  In affirming this Court's decision denying the defendant's motion to dismiss because the statute at issue, 14 U.S.C. § 88(c), defined a general- rather than specific-intent crime, the Eleventh Circuit in United States v. Haun, 2007 WL 2230170 (11th Cir. 2007) recently stated that

> '[T]he meaning of statutory language, plain or not, depends on context.'  The court should 'adopt that sense of the words which best harmonizes with the context, and promotes in the fullest manner the policy and objects of the legislature.'
> . . .
> Haun attempts to muddy the waters by arguing that the statute requires that the Government prove that he knew he was violating the specific law he was charged with violating. Criminal statutes, although they are to be strictly construed, 'are not to be construed so strictly as to defeat the obvious intention of Congress. . . . The rule of common sense must be applied to the construction of criminal statutes, the same as others.' United States v. Bristol, 473 F.2d 439, 442 (5th Cir. 1973) (quotation and citation omitted) (noting that it is difficult to 'bootstrap' a specific intent requirement to a statute that has no common law basis); see also United States v. Meeker, 527 F.2d 12, 14 (9th Cir. 1975) (reasoning that if Congress had intended to legislate a specific intent crime, the statute would have said 'with the intent to').
>
> The language of the House Committee Report discussing the bill . . . indicates that Congress wanted to penalize not only those who directly communicate a false distress message to the Coast Guard or direct someone to send a false distress message, but also those who indirectly, by their actions, cause the Coast Guard to attempt to save lives and property when no help is needed.

Id. (citations omitted).

Section 2250(a)(3) requires that the accused "knowingly fail[] to register or

update a registration as required by [SORNA]"; it does not require that the accused "knowingly fail[] to register or update a registration *with the intent to violate* SORNA." Consistent with the Eleventh Circuit's focus in Haun on context, objects of the legislature, and common sense, it is apparent from SORNA's legislative history that Congress enacted SORNA to track the whereabouts of sexual offenders and that the crime with which Defendant is charged with committing was enacted to penalize sexual offenders who attempt to thwart that purpose:

> By requiring national registration obligations, regular updates, frequent in-person verification, and providing tough and targeted criminal penalties, we intend to make one thing clear to sex offenders across the country - you better register, and you better keep the information current, or you are going to jail.

152 Cong. Rec. H5705, 5722 (daily ed. July 25, 2006) (statement of Rep. Sensenbrenner), quoted in U.S. v. Hinen, 487 F.Supp.2d 747, 753 (W.D. Va. 2007) ("Indeed, it was Congress's desire to create a comprehensive and uniform registration system among the states to ensure offenders could not evade requirements by simply moving from one state to another. It would be illogical for members of Congress to express concern that thousands of sex offenders who were required to register under state law were evading those registration requirements and then exempt those same offenders from SORNA.") See also United States v. Roberts, 2007 WL 2155750, *2 (W.D. Va. 2007) (In enacting SORNA, "Congress was concerned with the possibility that then-existing sex offenders were slipping through the cracks of the disparate 50 state registration systems.").

In essence, the legislative mandates in SORNA and its criminal penalty are broad and inclusive. Section 2250(a) is not concerned with whether Defendant knew that failing to provide the information necessary to track his whereabouts violated SORNA or whether he knowingly intended to violate SORNA; rather, the government may satisfy the mens rea element under § 2250(a)(3) by simply proving, consistent with the plain language of the statute, that a defendant knowingly failed to provide the information which SORNA requires. Here, the face of the Indictment which charges Defendant with "knowingly" failing to register and update a registration as required by

Page 10 of 18

SORNA, particularly when corroborated by the Initial Registration and Information Sheet purportedly signed by Defendant after SORNA's effective date, the Affidavit and Application for Arrest Warrant, and Defendant's application for a Florida driver's license are more than sufficient to permit the government to present its case to the jury on the mens rea element of the offense charged. Defendant's first ground for dismissal is denied.

**B.   Alleged Failure of Indictment to Allege that Defendant Traveled In Interstate Commerce After SORNA Was Effective or Applicable To Him**

Defendant's second ground for requesting dismissal is that the Indictment fails to allege the date on which Defendant traveled in interstate commerce and that Defendant could not have violated SORNA unless he traveled in interstate commerce after SORNA's effective date of July 27, 2006, and the date SORNA was deemed to be retroactive by the Attorney General, February 28, 2007.

In assessing the merits of Defendant's contention, I turn to the fundamental principles which guide and determine the proper construction of indictments. In United States v. Critzer, 951 F.2d 306 (11th Cir. 1992), the Eleventh Circuit stated that

> There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence. . . . The sufficiency of a criminal indictment is determined from its face. The indictment is sufficient if it charges in the language of the statute.
>
> An indictment must be sufficiently specific to inform the defendant of the charge against him and to enable him to plead double jeopardy in any future prosecution for the same offense. An indictment satisfies these requirements as long as the language therein sets forth the essential elements of the crime. United States v. Cole, 755 F.2d 748, 759 (11th Cir. 1985).

Id. at 307-08.

Here, the Indictment is sufficient. It tracks the wording of the charging statute, cites to that statute, and sets forth all elements of the crime. The Indictment charges Defendant with committing the crime on or about January 23, 2007. Defendant knows if and when he traveled in interstate commerce. The Indictment is sufficiently specific to

inform Defendant of the charge against him and to enable him to plead double jeopardy in any future prosecution for the same offense. "It is not necessary for an indictment . . . to allege in detail the factual proof that will be relied upon to support the charges. That information, if essential to the defense, can be obtained by a motion for a bill of particulars." United States v. Sharpe, 438 F.3d 1257, 1263, n.3 (11th Cir. 2006) (citation omitted). "[A] court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial." United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987). The Indictment is sufficient.

Defendant, however, contends that even if the Indictment is sufficient, the travel requirement in § 2250(a)(2)(B) was not effective until SORNA was enacted on July 27, 2006, and the date SORNA was deemed to be retroactive by the Attorney General, February 28, 2007. Because Defendant asserts that he traveled after these dates, Defendant contends that SORNA does not apply to him.

I am puzzled by both of these contentions. Defendant's first point that he must have traveled in interstate commerce after SORNA's effective date in order to be convicted of the interstate travel requirement in § 2250(a)(2)(B) is moot. The Indictment charges that Defendant violated § 2250(a) on or about January 23, 2007. This date is well after SORNA's effective date of July 27, 2006. The documents submitted by the government indicate that Defendant was initially registered in Colorado as a sex offender on September 13, 2006, and that he was issued a driver's license in a different state - Florida - on January 23, 2007. Both of these dates occurred after SORNA had taken effect. Assuming these documents to be authentic, I find Defendant's assertion that he did not travel interstate after SORNA's effective date to be nonsensical.

Defendant's second point that he must have traveled in interstate commerce after the Attorney General deemed SORNA to be retroactive on February 28, 2007, is equally perplexing. Defendant cites to no authority that the date on which the Attorney General deems a statute to be retroactive determines whether Defendant has committed a crime under a statute enacted by Congress. Defendant's second ground for dismissal is denied.

**C. 18 U.S.C. § 2250(a)(2)(B) As Violating Defendant's Constitutional Right to**

**Interstate Travel**

Defendant's third ground for dismissal is that § 2250(a), by requiring that the accused travel in interstate commerce as an element of the offense but not requiring such travel to be in furtherance of, in connection with, or for the purpose of, any illegal activity, impinges on the accused's constitutional right to interstate travel. Defendant contends that absent a nexus between travel and illegal activity, the statute is unconstitutional. This contention is also without merit.

Defendant cites to only general constitutional principles and not to specific authority holding that § 2250(a) is unconstitutional because it violates the right to travel. Perhaps this is so because the decisional law wholly fails to support Defendant's constitutional argument. In Doe v. Moore, 410 F.3d 1337 (11th Cir. 2006), the Eleventh Circuit addressed whether Florida's sex offender/notification act, the Florida counterpart to SORNA, infringed the right to travel under the United States Constitution. The court stated that

> mere burdens on a person's ability to travel from state to state are not necessarily a violation of their right to travel. See Saenz v. Roe, 526 U.S. 489, 499, 119 S. Ct. 1518, 1524, 143 L. Ed. 2d 689 (1999) (noting a statute cannot "unreasonably burden" the right to travel). In the predominant case law, the right to travel protects a person's right to enter and leave another state, the right to be treated fairly when temporarily present in another state, and the right to be treated the same as other citizens of that state when moving there permanently. Id. at 500, 119 S. Ct. at 1525.
>
> Here, however, the Appellants do not argue that they were treated differently because they were a new or temporary resident to Florida or that they were not allowed to enter and leave another state. Rather, they argue that it is inconvenient to travel from their permanent residence because the Sex Offender Act requires them to notify Florida law enforcement in person when they change permanent or temporary residences. Though we recognize this requirement is burdensome, we do not hold it is unreasonable by constitutional standards, especially in light of the reasoning behind such registration. The state has a strong interest in preventing future sexual offenses and alerting local law enforcement and citizens to the whereabouts of those that

> could reoffend. Without such a requirement, sex offenders could legally subvert the purpose of the statute by temporarily traveling to other jurisdictions for long periods of time and committing sex offenses without having to notify law enforcement. The state has drawn a line for temporary and permanent relocation, and we hold this requirement does not unreasonably burden the Appellant's right to travel.

Id. at 1348-49.

I find that the Eleventh Circuit's findings in Moore are controlling on this issue. For the same reasons that the Moore court rejected the appellants' argument that Florida's Sex Offender Act infringed their constitutional right to travel, I find that neither SORNA nor § 2250(a) unconstitutionally impinge upon Defendant's right to travel. Defendant's third ground for dismissal is denied.

## D. 18 U.S.C. § 2250(a)(2)(B) As a Misuse of Congress's Authority Under the Commerce Clause

Defendant next contends that § 2250(a)(2)(B), by requiring that the accused travel in interstate commerce as an element of the offense but not requiring that such travel be in furtherance of a crime which affects interstate commerce or the instrumentalities of interstate commerce, is an improper exercise of Congress's authority under the Commerce Clause. This contention is also without merit.

Defendant cites no authority to support his proposition that the imposition of criminal penalties in the instant case would violate the Commerce Clause. Defendant also cites no authority that a statute must specifically state that the accused "travel[ed] in interstate commerce with the intent to commit" a specified crime, or that the travel "affected interstate commerce," or that the travel "affected the instrumentalities of interstate commerce" in order to constitute a valid exercise of Congress's power under the Commerce Clause. Instead, Defendant cites to a scant collection of Supreme Court decisions which have struck down legislation as invalid exercises of Congress's authority under the Commerce Clause. See Jones v. United States, 529 U.S. 848, 120 S. Ct. 1904, 146 L. Ed. 2d 902 (2000); United States v. Morrison, 529 U.S. 598, 120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000); United States v. Lopez, 514 U.S. 549, 115 S. Ct.

1624, 131 L. Ed. 2d 626 (1995).

The cases cited by Defendant substantively explore the relationships between the statutes at issue and interstate commerce; they do not address a facial challenge to the statutes' wording. Here, Defendant's one paragraph argument makes no attempt to assert a Commerce Clause challenge on its merits; rather, he restricts his argument to a facial attack on the statute's plain language.

Nowhere, however, has Defendant supported his contention that a statute passed under Congress's Commerce Clause authority must include the words "travel[ed] in interstate commerce with the intent to commit" a specified crime or words requiring that the travel "affected interstate commerce, "affected the instrumentalities of interstate commerce," or similar language to pass constitutional muster. Rather, the question is whether a nexus does, in fact, *exist* between the statute at issue and interstate commerce sufficient to sustain Congress's authority under the Commerce Clause. Because Defendant has not properly asserted or developed this argument in his request for dismissal, I find it proper to deny Defendant's fourth ground for dismissal on that basis alone.

However, even if Defendant had properly asserted a Commerce Clause challenge, I find that § 2250(a) is still a proper exercise of Congress's Commerce Clause power because "Congress may regulate those individuals or things that travel in interstate commerce without regard to the reason for their movement" under the second prong of Lopez. United States v. Mason, 2007 WL 1521515, *7 (M.D. Fla. 2007) (citing Lopez, 514 U.S. at 558) ("Congress may properly regulate . . . (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce . . .")). See also United States v. Hinen, 487 F.Supp.2d 747, 758 (W.D. Va. 2007) (where a jurisdictional predicate is present in a statute, as is the case with SORNA where the government gains jurisdiction only where a person required to register under SORNA "travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country," Congress may properly regulate such persons under Lopez's second prong.) The statute, on its face, is therefore a valid exercise of Congress's power under the

Commerce Clause.³

### E.  SORNA and § 2250(a) as Unconstitutionally Ex Post Facto

In his fifth ground for dismissal, Defendant contends that if convicted under § 2250(a), he will be unconstitutionally punished for a crime committed before SORNA was enacted; SORNA and § 2250(a) were intended by Congress to be punitive rather than civil and non-punitive; and a penalty could be impermissibly imposed on Defendant that could not have been imposed at the time he committed the qualifying offense for which he was convicted.  In short, Defendant asserts that SORNA and § 2250(a) violate the federal Constitution's ban on ex post facto laws.

Again, Defendant cites no authority in support of his contention that SORNA and § 2250 are ex post facto.  In fact, Defendant cites to a single case in which the court held that the statute at issue was civil and nonpunitive and then attempts to distinguish that case.  See Smith v. Doe, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003). Numerous courts, however, have specifically addressed the issue of whether SORNA and § 2250 are ex post facto and have concluded that they are not.  See Hinen, 487 F.Supp.2d at 755-57; Mason, 2007 WL 1521515 at *4-5; United States v. Markel, 2007 WL 1100416, *1-2 (W.D. Ark. April 11, 2007); United States v. Manning, 2007 WL 624037, *1-2 (W.D. Ark. Feb. 23, 2007); United States v. Templeton, 2007 WL 445481, *4 (W.D. Okla. Feb. 7, 2007); Madera, 474 F.Supp.2d at 1262-64.

The only case the Court has located holding that SORNA violates the Ex Post Facto Clause is United States v. Smith, F.Supp.2d 846 (E.D. Mich. 2007).  Smith, however, is distinguishable from this case because the defendant in Smith traveled in interstate commerce before SORNA took effect, whereas the government here alleges and produced corroborating evidence that Defendant traveled to Florida after SORNA had taken effect.  As noted in Mason, 2007 WL 1521515, *5 at n.4 (M.D. Fla. 2002), "[t]his crucial temporal distinction renders the specific holding of Smith inapplicable . . .

---

³Although I need not address whether SORNA is constitutional under the third prong of Lopez, "activities that substantially affect interstate commerce," I note that other courts have also found SORNA constitutional under that prong. See, e.g., United States v. Madera, 474 F.Supp.2d 1257, 1265 (M.D. Fla. 2007).

because that case held that SORNA 'does violate the ex post facto clause, insofar as the Government seeks to apply it to a defendant who *traveled* in interstate commerce *prior to* July 27, 2006. . . ."

I find the reasoning in these cases to be persuasive and sound.  Because the facts in this case are distinguishable from the facts in Smith and because Defendant has failed to cite authority contrary to those decisions holding that SORNA and § 2250 are not ex post facto, I find Defendant's characterization of SORNA and § 2250 as ex post facto laws to be without merit.  Defendant's fifth ground for dismissal is denied.

**F.   SORNA and 18 U.S.C. § 2250 As Violative of Procedural and Substantive Due Process Rights Under the Fifth Amendment**

Defendant next contends that SORNA and § 2250 violate procedural and substantive due process rights under the Fifth Amendment because the accused may be required to fulfill SORNA's registration and reporting requirements without first having the opportunity to challenge a prior conviction on appeal or in collateral proceedings, thereby subjecting the accused to the loss of a liberty interest.  Defendant also contends that the statutes violate his due process rights because they do not permit "an individualized determination of risk of recidivism or dangerousness" prior to having a person's name published on the sex offender registry.

I am unable to assess the merits of Defendant's first contention.  In making the argument that the statutes violate due process because they do not permit the accused to challenge a prior conviction on appeal or in collateral proceedings, Defendant does not contend that *he* has been denied an opportunity to challenge his 1993 conviction on appeal or in collateral proceedings.  Defendant was convicted approximately fourteen years ago.  He does not aver that he has, in the past, been denied the right to challenge that conviction on appeal or in collateral proceedings or that he intends to do so in the future.  If Defendant intends to challenge his conviction, he may file the appropriate documents in the court which convicted him.  I therefore find that Defendant lacks standing to raise this argument.

Defendant's second contention that the statutes violate his due process rights because they do not permit "an individualized determination of risk of recidivism or

dangerousness" prior to having a person's name published on the sex offender registry is also without merit. Again, Defendant cites no authority in support of this ground for dismissal. In fact, Defendant all but concedes that SORNA and § 2250 do *not* violate his due process rights by citing to cases nearly holding just that. See Connecticut Dep't of Public Safety v. Doe, 538 U.S. 1, 4, 123 S. Ct. 1160, 1161-63 (2003) (holding that due process does not entitle registered sex offenders to a predeprivation hearing to determine whether they are likely to be "currently dangerous" under Connecticut sex offender registration statute where registration requirement was based not on "current dangerousness" but on prior conviction as sex offender); Doe v. Moore, 410 F.3d 1337 (11th Cir. 2005) (holding that Florida sex offender registration law is rationally related to legitimate government interest in protecting citizens from criminal activity and therefore does not violate substantive due process rights); Mason, 2007 WL 1521515, *5-6 ("[t]he Court declines to find that SORNA is not 'rationally related to legitimate government interests,'" thereby surviving due process challenge).

In light of the Supreme Court and Eleventh Circuit decisions upholding SORNA's parallel statutes against due process challenges, I find Defendant's due process challenges in the instant case to be without merit. Defendant's sixth ground for dismissal is denied.

## G. SORNA and § 2250 As Retroactive

Defendant asserts in ground seven that dismissal is justified because Congress did not make clear its intent to retroactively apply SORNA and § 2250. This contention is moot in light of the government's allegations and supporting documentation indicating that Defendant traveled and failed to fulfill SORNA's registration requirements after SORNA had taken effect. Defendant is not charged with a committing a crime under a statute which the government has retroactively applied; rather, Defendant is charged with committing a crime under a statute that was already in effect when he is alleged to have committed the crime. Defendant's seventh ground for dismissal is denied.

## H. SORNA and § 2250 as Unconstitutional Delegations Of Legislative Power By

**Congress to the Attorney General**

Finally, Defendant contends that SORNA and § 2250 are unconstitutional because Congress impermissibly delegated its constitutionally prescribed legislative authority to the executive branch of government.  In particular, Defendant contends that "Congress placed the crucial determination of whom is subject to criminal liability, and whether they would be retroactively exposed to prosecution in the hands of the Executive Branch via the Attorney General."  This contention, however, is moot in light of the government's allegations and supporting documentation that Defendant had been convicted of a qualifying sex crime; was required to register and update his registration under SORNA; had been initially registered and notified of his registration duties; had traveled in interstate commerce after SORNA's effective date; and had knowingly failed to register or update a registration as required by SORNA after its effective date.

I find that Defendant, therefore, lacks standing to raise the delegation issue.  He is not contending, *in his particular case*, that the executive branch had usurped the role of the legislature in charging him with a crime.  Defendant has not been charged under rules promulgated by the Attorney General; rather, Defendant has been charged by Congress and its legislative mandate that is codified in § 2250.  Defendant's eighth ground for dismissal is denied.

### III. Conclusion

Defendant's Amended Motion to Dismiss Indictment (Doc. 20) is **denied**.

**ORDERED** on August 9, 2007.

/s/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**